(38 Misc. Rep. 302.)

STURGIS, Fire Com'r, v. COLEMAN.

(Supreme Court, Appellate Term. June, 1902.)

1. THEATERS—OBSTRUCTIONS IN AISLES.

 Under Laws 1897, c. 378, § 762, being the charter of the city of New York, providing for the punishment of any manager or employé of a theater who shall allow any obstructions to remain in an aisle thereof, the word "aisle" means the aisle of a theater as actually constructed, and not a theoretical aisle of the minimum width permissible under the building code of the city; and a manager of a theater who allows patrons to occupy stools and chairs in a side aisle of his theater as constructed, and refuses to remove them on notice, is liable to the penalty imposed.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by Thomas Sturgis, fire commissioner of the city of New York, against John J. Coleman. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

George L. Rives, Corp. Counsel, for appellant.
A. J. Talley, for respondent.

GILDERSLEEVE, J. This is an appeal by the plaintiff from a judgment of the municipal court in favor of the defendant dismissing the complaint. The action was brought to recover the penalty of $50 imposed by section 773 of the Greater New York charter (Laws 1897, c. 378) for a violation of the provisions of section 762 of said charter, which prohibits the obstruction of the aisles of a theater. Section 762 provides as follows:

"If the manager or proprietor, or such usher, agent or employee shall cause or permit any camp-stool, chairs, sofas, or other obstructions to be placed or remain in any aisle or passageway, in any such place of amusement, or shall cause, or permit any person to stand or sit therein, during any public performance, or, having been so notified, shall neglect or refuse to cause such obstruction to be forthwith removed, or to cause such person or persons to forthwith vacate said aisles or passageways, they shall each severally be deemed to have violated the provisions and requirements of this title and the regulations or orders duly made thereunder, and shall be subject to the penalties prescribed in this act."

It is charged in the complaint that the defendant, as manager of the American Theater, violated the provisions of said section 762 by permitting persons to occupy stools and chairs placed in the side aisles of the said theater, and by refusing to remove said stools and chairs when duly notified to do so. The issues are presented upon an agreed statement of facts. It is agreed that the aisles, exclusive of the space occupied by the stools or chairs, are greater in width than required by the building code, and that the space in the aisles, not taken up by the stools or chairs, might lawfully be occupied by regularly built-up seats. The particular aisle that is the subject of discussion here is a side aisle. The revised building code requires a side aisle to be

only two feet wide at its point of beginning, and that it shall increase in width toward the exit in the ratio of one and a half inches to every five feet. As we have seen, the aisle in question is much wider at all points, after deducting the encroachment by the stools or chairs, than the law demands. It is conceded that they actually stand in and occupy a portion of "the aisle" as it was laid down in the original plans of the theater, and that no new plans, providing for alterations, have been filed with the building department. The question to be determined by this court is a question of law, and is as follows: What constitutes an aisle, as the word is used in section 762 of the charter? Is it such a space or passageway for ingress or egress as has been actually constructed and now in use, according to plans filed with and approved by the building department, or is it in the space required by the present building code, and such an aisle as might have been built, or might now be built, of the minimum width permitted by said Code? The court below held that the latter was the correct interpretation or meaning, and dismissed the complaint. We think this too technical an interpretation, and that it jeopardizes the beneficent effect the legislature intended, to wit, the safety of the public. The wrong act charged is the obstruction of the passageways by camp stools or chairs, and the neglect to remove them when notified. It was obviously the intention of the legislature to make the passageways of theaters as safe for ingress and egress as practicable in times of emergency and danger. The patrons of a theater need no special protection under ordinary circumstances. It was a panic in a crowded theater, and the prevention of the sacrifice of human lives, that the law under consideration was intended to safeguard. This desirable result can only be accomplished by interpreting the word "aisle," as used in the charter, in the popular sense. An aisle is popularly understood to mean the space between the regularly constructed seats set apart as a passageway for ingress and egress, and an audience is entitled to so consider that space, and act accordingly. To hold that an aisle is only that amount of space prescribed by the building law would defeat the plain intention of the law, and permit the use of chairs in all passageways, to the extent of not encroaching upon the prescribed limit of space, and render such passageways exceedingly dangerous in case of fire or panic. The aisle of a theater must be said to be the aisle laid down in the plans filed,—the aisle accordingly constructed, in use, and observable to all persons entering and occupying a theater. The manager of a theater has the right to utilize, to the fullest extent, the seating capacity of his house, so long as he complies with the law; but the law does not permit him to occupy the portion of the auditorium he has voluntarily set apart for aisles with camp stools or chairs. This construction is in accord with well-settled rules, which hold that words must be understood to have been employed in their natural sense, and gives due effect to the manifest intent of the lawmaking power. The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.